**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-50055
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALFREDO GAYTAN, JESUS GREGARIO MACIAS-MUNOZ, a/k/a Jesse Macias, and RENE GANDARA-GRANILLO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Western District of Texas
_____

January 23, 1996

Before GARWOOD, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The defendants appeal their convictions and sentences on a number of charges arising from their involvement in a massive drug trafficking conspiracy. We affirm in part, reverse in part, vacate in part, and remand for resentencing.

I.

Between June 1988 and June 1992, Rene Gandara-Granillo ("Gandara") and Jesse Macias-Munoz ("Macias") were the leaders of a large-scale cocaine operation based in El Paso, Texas. Besides

trafficking in cocaine, they arranged the kidnapping, torture, and interrogation of several of their associates who failed to account for missing cocaine or funds. Alfredo Gaytan was a lower-level operative in the conspiracy who participated in several meetings involving the drug transactions, and on at least one occasion stored and counted large quantities of cocaine at his residence. Altogether, the conspirators may have moved over 8,000 kilograms of cocaine during the course of several years.

A federal investigation utilized undercover agents, extensive surveillance, wiretapping of the defendants' cellular phones, information provided by coconspirator, and the co-conspirators' post-arrest statements. The investigation culminated in an eleven-count indictment charging the defendants with conspiracy to import cocaine (count one), conspiracy to possess cocaine with intent to distribute (count two), money laundering (counts three through seven), conspiracy to kidnap (counts eight and nine), and use of a telephone with intent to commit a crime of violence (counts ten and eleven). Counts one and two named thirteen coconspirators and referred to others "known and unknown."

After a lengthy trial, Macias was found guilty on counts one, two, three, six, eight, nine, ten, and eleven; Gandara was found guilty on counts two, four, five and eight; and Gaytan was found guilty on count two but acquitted as to count one. Macias and Gandara were sentenced to life imprisonment, while Gaytan received a 188-month sentence.

## II.  Alleged Errors in the Indictment

Counts one and two charged criminal conspiracy.  The defendants assert that their convictions on these counts must be reversed because (1) the indictment failed to provide adequate notice of the charges; (2) there was a fatal variance between the indictment and the evidence produced at trial; and (3) the district court refused their requested multiple conspiracy instruction.

## A.  Adequate Notice of the Charges

We review the sufficiency of an indictment de novo.  United States v. Nevers, 7 F.3d 59, 62 (5th Cir. 1993), cert. denied, 114 S. Ct. 1124 (1994).  We will not reverse convictions for minor deficiencies in the indictment that cause no prejudice.  United States v. Flores, 63 F.3d 1342, 1360 (5th Cir. 1995); United States v. Chappell, 6 F.3d 1095, 1099 (5th Cir. 1993), cert. denied, 114 S. Ct. 1235, and cert. denied, 114 S. Ct. 1235 (1994).

The defendants complain that counts one and two are "factually barren" and violate both FED. R. CRIM. P. 7(c)(1) and the Sixth Amendment, because "[a]llegations such as time, dates, places and persons involved and specific criminal acts, [sic] necessary to know the nature of the charges and prepare a defense simply are lacking."  More particularly, the defendants argue that their attorneys could not adequately investigate the circumstances or the persons involved in any of the specific transactions involved in the alleged conspiracy.

The Sixth Amendment requires that an indictment (1) enumerate

3

each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions. United States v. Arlen, 947 F.2d 139, 144 (5th Cir. 1991), cert. denied, 503 U.S. 939 (1992). The dictates of FED. R. CRIM P. 7 are essentially the same. See United States v. Ellender, 947 F.2d 748 (5th Cir. 1991); see also Nevers, 7 F.3d at 62.

In Ellender, defendants convicted of conspiracy to import marihuana challenged the sufficiency of the indictment for failure to specify the time, location, and precise dates of acts involved in the conspiracy. We held that the indictment language "'commencing in or about the month of July, 1982, and continuing through the month of August, 1984 . . .'" was sufficient. Id. at 755-56 ("The precise dates on which the appellant committed the alleged acts are not necessary."). We also held that the language "in the Western District of Louisiana, and elsewhere" was sufficient to identify the location of the conspiracy. Id. The language of the indictment before us is nearly identical and therefore sufficient.[1]

Nor is it fatal that the indictment failed to identify specific criminal acts constituting the alleged conspiracy. The purpose of the indictment is to provide the defendant with notice

---

[1] The defendants rely upon United States v. Cruikshank, 2 Otto (92 U.S.) 542 (1875), to support their argument. But our holding in Ellender takes Cruikshank into consideration, at least derivatively. Ellender is the progeny of United States v. Gordon, 780 F.2d 1165 (5th Cir. 1986), which explicitly considered Cruikshank before concluding that "the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." Id. at 1171; see United States v. Lavergne, 805 F.2d 517, 521 (5th Cir. 1986) (relying on Gordon); Ellender, 947 F.2d at 755-56 (relying on Lavergne).

4

of the offense with which he is charged.  See United States v. Haqmann, 950 F.2d 175, 182 (5th Cir. 1991), cert. denied, 506 U.S. 835 (1992).  "[A]n indictment need not allege an overt act in furtherance of the conspiracy if the indictment alleges a conspiracy to distribute drugs, the time the conspiracy was operative, and the statute allegedly violated."  United States v. Khan, 728 F.2d 676, 681 (5th Cir. 1984).

While the defendants complain of the indictment's failure to identify unindicted coconspirators, they concede that the prosecution produced a list of forty-seven individuals five days prior to trial pursuant to an order by the district court.  Five days' notice is certainly less than ideal, but the defendants cite no cases requiring that the indictment name unindicted coconspirator, nor do they provide evidence of any prejudice arising from the government's failure to disclose these names earlier.  We therefore find no error.


B.  Fatal Variance

The defendants maintain that a fatal variance existed between the evidence presented at trialSSwhich they allege demonstrated the existence of six separate conspiraciesSSand the indictment, which alleged a single conspiracy.  We may reverse a conviction when the defendant both proves a variance between the government's evidence at trial and the allegations in the indictment and demonstrates that the variance prejudiced his substantial rights.  United States v. Morris, 46 F.3d 410, 414 (5th Cir.), cert. denied, 115 S. Ct.

5

2595, and cert. denied, 115 S. Ct. 2595 (1995); United States v. Puig-Infante, 19 F.3d 929, 935-36 (5th Cir.), cert. denied, 115 S. Ct. 180 (1994). We find no variance between the indictment and the evidence adduced at trial, and we therefore do not consider whether the defendants' substantial rights were prejudiced.

"We must affirm the jury's finding that the government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." United States v. De Varona, 872 F.2d 114, 118 (5th Cir. 1989). To establish the existence of a drug conspiracy, the government must prove "(1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) that each conspirator knew of the conspiracy and intended to join it; and (3) that each alleged conspirator participated in the conspiracy." Morris, 46 F.3d at 414-15. Among the factors to be considered in determining whether a single conspiracy was proven by the government are (1) the existence of a common goal, (2) the nature of the scheme, and (3) whether the participants overlapped. Id. at 415; Puig-Infante, 19 F.3d at 936.

The evidence was sufficient to support a finding of a single conspiracy under the above standard. The common goal of the conspiracy was financial gain through the importation and distribution of cocaine from El Paso to California. The evidence demonstrated that each defendant played a particular role in the conspiracy. Intercepted conversations between Macias and Gandara,

6

viewed in combination with testimony and tape recordings of each of them regarding other transactions, suggests that they were heavily involved in the planning and distribution of the cocaine. There was evidence that Gaytan counted and stored 115 kilograms of cocaine at his home at Macias's direction. Macias was also involved with the storage of money at Gaytan's residence. Taken in conjunction, the evidence demonstrates significant overlap between the defendants, with each performing special functions critical to the overall success of the enterprise. A reasonable juror considering this evidence could find that a single conspiracy existed. See Morris, 46 F.3d at 416 (holding that "the existence of a single conspiracy will be inferred where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture").

### III. The Multiple Conspiracy Instruction

The defendants next argue that the court erred by denying their request to give the Fifth Circuit Pattern Jury Instruction. We review a refusal to give a requested jury instruction for abuse of discretion. Morris, 46 F.3d at 418. We reverse only if the proposed instruction is (1) substantively correct, (2) was not substantially covered in the charge actually delivered to the jury, and (3) concerns an important point in the trial so that failure to give it seriously impaired the defendant's ability to present a defense effectively. Id. at 418-19; United States v. Storm, 36 F.3d 1289, 1294 (5th Cir. 1994), cert. denied, 115 S. Ct. 1798

7

(1995).

The substance of the requested instruction was adequately covered by the charge. The court departed from the Pattern Jury Instruction to offer a more precise one because more than one conspiracy count was alleged in the indictment. In doing so, the court did not abuse its discretion.

## IV.  The Roving Wiretap

Much of the government's evidence consisted of tape recordings and transcripts of the defendants' cellular telephone conversations obtained through a wiretap. Macias and Gandara contend that the district court erred by denying their motions to suppress that evidence. They argue that the "roving wiretap" provision of 18 U.S.C. § 2518(11)(b), which the government relied on when obtaining the wiretap order, violates the Fourth Amendment. If the provision is constitutional, they maintain the district court nonetheless should have suppressed the conversations because the government failed to comply with the statutory requirements for a roving wiretap.

## A.  Constitutionality of the Roving Wiretap Provision

The defendants argue that a roving wiretap violates the particularity requirement of the Fourth Amendment because it authorizes interceptions without requiring the government to identify the place of interception in the warrant. Only the Ninth Circuit has addressed the constitutionality of the roving wiretap

8

provision, and it found the provision acceptable.  See United States v. Petti, 973 F.2d 1441 (9th Cir. 1992), cert. denied, 113 S. Ct. 1859 (1993); see also United States v. Bianco, 998 F.2d 1112, 1122-24 (2d Cir. 1993) (upholding constitutionality of "roving bugs" to intercept oral communications not transmitted via wire or electronic means on similar grounds), cert. denied, 114 S. Ct. 1644 (1994).  Petti noted that § 2518 permits only surveillance of telephone facilities used by a speaker identified in the wiretap order and excuses the identification of particular telephone facilities only if the government establishes that the person to be intercepted has attempted to evade surveillance by changing facilities.  Petti, 973 F.2d at 1445.  We find Petti persuasive and join the Ninth Circuit in finding the roving wiretap provision constitutional.

B.  Conformity with Statutory Requirements

The defendants next argue that the government failed to comply with the requirements of § 2518.  First, they complain that the wiretap order itself allowed the interception of conversations of persons not identified in the order.  As a result, they argue that conversations between parties not specifically named in the order were intercepted by federal agents.  They also maintain that the government failed to follow procedures to minimize the interception of such conversations.  Second, the defendants assert that the affidavit submitted by the government in support of its application was insufficient to demonstrate that the defendants had attempted

9

to evade surveillance. The defendants suggest that the proper remedy for these deficiencies is the suppression of all intercepted communications.

It is true that the order allowed the interception of telephone conversations that did not involve a person specifically named in the order. As written, the order permitted the "intercept[ion of] wire communications of JESUS GREGORIO MACIAS-MUNOZ, aka Jesse Macias, Tocayo; . . . RENE GANDARA-GRANILLO, aka Compa, Compira; . . . <u>and</u> others yet unknown" (emphasis added). The government contends that this was a mere clerical error and that the order should have read "<u>with</u> others yet unknown." It is also true that the government intercepted many phone calls that did not involve any of the parties specifically named in the order, though it maintains that it properly screened calls and terminated interception when it became apparent that none of the named parties was involved in the conversation.

Even assuming the order to be overly broad and some of the interceptions to have been improper, the district court corrected the matter by excluding from evidence "[i]nterceptions from the cellular telephones not involving at least one of these individuals [named in the wiretap order] as a party to the conversation." The exclusionary rule does not require the exclusion of those conversations that were properly intercepted as well. <u>See</u> <u>United States v. Morris</u>, 977 F.2d 677, 682 (1st Cir. 1992) (holding partial suppression sufficient where search warrant valid as to some items but not as to others), <u>cert. denied</u>, 113 S. Ct. 1588

10

(1993); United States v. Baldwin, 987 F.2d 1432, 1436 (9th Cir.) (holding that only items seized pursuant to invalid portions of warrant must be suppressed), cert. denied, 113 S. Ct. 2948 (1993).

The defendants' second argumentSSthat the government did not demonstrate that the defendants had engaged in conduct to thwart surveillanceSSalso fails.  The affidavit of Elias Hernandez supporting the government's request for the wiretap order indicated that the defendants had engaged in a pattern of changing cellular phone numbers in an effort to avoid surveillance.

### V.  The Admission of Gaytan's Post-Arrest Statement

Gaytan argues that the district court erred by admitting his statement to an FBI agent following his arrest on February 4, 1993, that he had stored cocaine at his house for Jaime Carrera approximately six months earlier.  Gaytan urges that this statement was inadmissible because it referred to a period not named in the indictment and was therefore evidence of another crime.  He also contends that it was obtained in violation of his Sixth Amendment right to counsel.

We review the admission of Gaytan's statement under the evidence rules for plain error, as Gaytan failed to raise an objection at trial.  See, e.g., United States v. Vaquero, 997 F.2d 78, 83 (5th Cir.), cert. denied, 114 S. Ct. 614 (1993).  We conclude that it was not plain error for two reasons.  First, FED. R. EVID. 404(b) allows the admission of evidence of other crimes to establish "proof of motive, opportunity, intent, preparation, plan,

11

knowledge, identity, or absence of mistake or accident," although such evidence is inadmissible "to prove the character of a person in order to show action in conformity therewith." It was within the court's discretion to determine whether the government sought to admit the statement for the former, legitimate reason or the latter, inappropriate one. Furthermore, Gaytan's statement may have been admissible because it referred to a vague time period. Gaytan indicated that he had stored cocaine with Carrera "approximately" six months prior to his arrest, or August 4, 1992. The indictment covers a period ending in June 1992. "Approximately" implies a margin of error. It is therefore possible that Gaytan's admission did refer to the period named in the indictment.

Gaytan's Sixth Amendment claim is equally without merit. Although the Sixth Amendment right to counsel attaches at indictment, see Michigan v. Jackson, 475 U.S. 625, 629-30 (1986) (stating that right to counsel attaches when adversary judicial proceedings are initiated), the "mere attachment" of Sixth Amendment rights does not prevent law enforcement officers from attempting to interrogate the defendant. Montoya v. Collins, 955 F.2d 279, 282 (5th Cir.), cert. denied, 113 S. Ct. 820 (1992). As long as the defendant is given Miranda warnings, his voluntary decision to answer questions without invoking the right to counsel constitutes waiver. Id.

An FBI agent testified at trial that Gaytan was advised of his right to consult with an attorney before answering any questions

12

and that Gaytan indicated that he understood those rights and elected to talk with the arresting agent. He therefore waived his right to counsel.

## VI. Failure To Provide a Limiting Instruction

Although most of the evidence presented at trial related to counts three through eleven, Gaytan was not indicted on those counts. He maintains that the district court erred by failing to instruct the jury that it should not consider, against him, evidence that related solely to counts three through eleven. Because he failed to request such a limiting instruction, we review for plain error. United States v. Prati, 861 F.2d 82, 86 (5th Cir. 1988).

Although the court did not issue a limiting instruction, it did instruct the jury that "[e]ach offense and evidence pertaining to it should be considered separately." Furthermore, Gaytan's counsel informed the jury that his client was "charged only with the first two counts" and that "he's not charged in any kidnapping counts or using the telephone or money laundering." Although Gaytan complains that the prosecutor stated in closing arguments that "they [the defendants] have been involved in tortures, in abductions, and that is what is at the heart of this case," we do not believe this statement was prejudicial. The prosecutor subsequently clarified that only two personsSSMacias and GandaraSSwere responsible for the kidnappings and torture. We find Gaytan's argument without merit because "the charge, considered as

13

a whole, [was not] so clearly erroneous as to result in a likelihood of a grave miscarriage of justice." Id. (quoting United States v. Varkonyi, 645 F.2d 453, 460 (5th Cir. Unit A May 1981)).

## VII. The Money Laundering Convictions

Macias and Gandara challenge the sufficiency of the evidence to support their convictions for money laundering under 18 U.S.C. § 1956(a)(1)(A)(I). We view the evidence in the light most favorable to the jury verdict and affirm if a rational trier of fact could have found that the government proved all essential elements of the offense beyond a reasonable doubt. Puig-Infante, 19 F.3d at 937. To support a conviction for money laundering under § 1956(a)(1)(A)(I), the government must prove that (1) the defendant conducted or attempted to conduct a financial transaction, (2) which the defendant then knew involved the proceeds of unlawful activity, (3) with the intent to promote or further unlawful activity. Id.; United States v. Morris, 46 F.3d at 423.

Macias and Gandara maintain that there was insufficient evidence that they had conducted a "financial transaction" with the proceeds of unlawful activity. In Puig-Infante, we distinguished a transaction of funds from mere transportation of funds, noting that a transaction involved "a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition . . . ." 19 F.3d at 938 (quoting 18 U.S.C. § 1956(c)(3)). "[F]or something (not involving a financial institution or its facilities) to be a transaction, it

14

must be a 'disposition.'  'Disposition most commonly means 'a placing elsewhere, a giving over to the care or possession of another.'"  Id. (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1961)).  We also observed that funds do not become the proceeds of drug trafficking until a sale of drugs is completed.  Hence, a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity when the transaction occurs, but become so only after the transaction is completed:

> However, because the money did not become proceeds of unlawful activity until the sale of the marihuana was completed, what the government describes as one transaction is actually two separate actions: the first, the sale by the Puigs of the marihuana to the Willises and their payment to Abigail Puig for same, is a transaction (and an unlawful one) but is not shown to have been one which involved the proceeds of unlawful activity; the second, Abigail Puig's transportation of the money from Florida to Laredo, involves the proceeds of unlawful activity but is not a transaction.

Id. at 939.

Applying this standard, we reverse Macias's conviction on count six and Gandara's conviction on count four.  In both cases, Jorge Aguilera owed Macias money for a drug debt.  Macias sent a third partySSRaul and Gloria Pimentel in one instance and Jaime Carrera in the otherSSto retrieve the money.  The money did not become the proceeds of drug trafficking, however, until Macias (or Gandara)[2] received it.  Nor is there any evidence indicating that Aguilera obtained the money through unlawful activity.  Thus, while

_____

    [2]    The Pimentels were to deliver the money to Macias himself, while Carrera delivered the money to Gandara.

15

it is true that several transactions took place, none involved the proceeds of unlawful activity.

We affirm Macias's conviction on count three and Gandara's conviction on count five. With respect to count three, Macias contends only that no transaction occurred. He concedes, however, that there was evidence that he received $2,000,000 from Navarro, which he then stored at Gaytan's residence, and that Navarro later retrieved the money. By delivering the proceeds to Gaytan's residence for storage and later to Navarro at Sunset Motors, Macias effected a "placing elsewhere" or "giving over to the care or possession of another" sufficient to establish a disposition of the funds.

We affirm Gandara's conviction on count five on the basis of Carrera's testimony that he and his brother delivered the proceeds of a cocaine sale to Gandara in El Paso. The delivery from Carrera to Gandara was a transaction, and, because Carrerra obtained the funds from a drug sale, the transaction involved the proceeds of an unlawful activity.

## VIII. The Kidnapping Counts

Macias and Gandara argue that the district court committed reversible error by not dismissing the kidnapping counts for failing to name the alleged victims. We find no merit in this argument. Although the court did not dismiss the indictment, it did order the government to identify the victims and the government complied.

16

The defendants claim prejudice because the court ordered that the government disclose the victims' names on September 1, less than two weeks before trial. Any prejudicial delay, however, was the defendants' own fault, for they waited until August to move for dismissal. It is true that they requested a bill of particulars in April, and the court indicated that they were entitled to know the names of the kidnapping victims,[3] but they failed promptly to file a motion for dismissal when the government did not disclose the names. We find no reversible error.

## IX.  Failure Properly To Swear a Witness

Gaytan asserts that the district court committed plain error by failing properly to swear a government witness. He raised no objection to this failure at trial, however. It is the general rule that a defendant who does not object to a failure to swear a witness at trial waives any right to raise that issue on appeal. United States v. Perez, 651 F.2d 268, 273 (5th Cir. Unit A July 1981). Gaytan has provided us with no reason to depart from that rule here. We therefore deem this claim to have been waived.

## X.  Impeachment Information in the Presentence Reports

The district court conducted an in camera review of the sealed presentence reports of two government witnesses, Jaime Carrera and Alejandro Navarro, pursuant to United States v. Jackson, 978 F.2d

---

[3]    The court did not actually order the government to disclose the names until September 1, however.

17

903, 909 (5th Cir. 1992), cert. denied, 113 S. Ct. 2429 (1993). Macias and Gaytan contend that the court erred in its determination that the reports contained no impeachment evidence to which they were entitled. We review for clear error only. See, e.g., United States v. Mora, 994 F.2d 1129, 1139 (5th Cir. 1993), cert. denied, 114 S. Ct. 417 (1993). We will not reverse unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Upon careful consideration of the pages cited by the defendants in their briefs, we conclude that the district court's determination was not clearly erroneous.

XI. Gaytan's Ineffective Assistance of Counsel Claim

Gaytan asserts that he received ineffective assistance of counsel at trial. He did not raise this claim before the district court, however, and we generally will not review an ineffective assistance of counsel claim for the first time on direct appeal. United States v. Navejar, 963 F.2d 732, 735 (5th Cir. 1992) (noting that we consider "'claims of inadequate representation on direct appeal only in rare cases where the record allow[s] us to fairly evaluate the merits of the claim'") (quoting United States v. Higdon, 832 F.2d 312, 314 (5th Cir. 1987), cert. denied, 484 U.S. 1075 (1988)); United States v. Bounds, 943 F.2d 541, 544 (5th Cir. 1991).

While Gaytan alleges several errors that may support a claim

18

of ineffective assistance of counsel, no hearing was held in the district court to develop a record. Nor is the record sufficient to resolve the question. We therefore decline to hear this claim, without prejudice to Gaytan's ability to raise it in a habeas corpus proceeding.

## XI.  Sentencing Issues

### A.  Quantity of Drugs for Calculating Base Offense Level

Macias and Gandara contend that the district court failed to make adequate findings regarding the quantity of drugs attributable to them as required by FED. R. CRIM. P. 32(c)(1), which provides that "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Id. At sentencing, the defendants contested the amount of drugs attributed to them in the presentence report ("PSR"). The district court then entered a separate finding with respect to each defendant, stating that a preponderance of the evidence established that each had been involved in a conspiracy involving not less then 1,500 kilograms of cocaine.

Rule 32 does not "'require a catechismic regurgitation of each fact determined and each fact rejected.'" Puig-Infante, 19 F.3d at 943 (quoting United States v. Sherbak, 950 F.2d 1095, 1099 (5th Cir. 1992)); see also United States v. Mora, 994 F.2d at 1141 ("The defendant is generally provided adequate notice of the district

19

court's resolution of the disputed facts when the court merely adopts the findings of the PSR.").  In <u>Puig-Infante</u>, we held that the district court's findings satisfied rule 32 where the court expressly had adopted the findings in the PSR regarding the amount of drugs attributable to the defendant and explained that its decision to adopt the findings was based upon its assessment of the testimony presented by the government.  19 F.3d at 943.  The facts of this case are indistinguishable:  The court adopted the findings in the PSR and found that a preponderance of the evidence indicated that the defendants had been involved in a conspiracy involving "not less than 1,500 kilograms of cocaine."  This satisfied the rule.

Macias and Gandara also contend that the information relied upon by the district court did not possess "sufficient indicia of reliability" as required under U.S.S.G. § 6A1.3(a), p.s.  They assert that the court erred by relying upon quantity calculations contained in the PSR's that were based almost entirely on the unreliable testimony of Jaime Carrera, a coconspirator turned government witness.  They argue that they demonstrated multiple inconsistencies in Carrera's testimony and that Carrera's status as a cooperating government witness undermined his credibility.

We review the district court's findings for clear error.[4]  For

---

[4]    <u>See</u> <u>United States v. Young</u>, 981 F.2d 180, 185 n.7 (5th Cir. 1992) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.") (quoting <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 565 (1985) (syllabus)), <u>cert. denied</u>, 113 S. Ct. 1986, <u>and cert. denied</u>, 113 S. Ct. 2454 (1993).

20

purposes of sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a), p.s.; see, e.g., United States v. West, 58 F.3d 133, 138 (5th Cir. 1995). Even uncorroborated hearsay evidence may be sufficiently reliable. Id.

The court's findings are not clearly erroneous. While Macias and Gandara dispute the reliability of Carrera's testimony, they do not demonstrate that his testimony regarding the quantity of cocaine was "materially untrue." Young, 981 F.2d at 185 ("The defendant bears the burden of demonstrating that the information the district court relied on is 'materially untrue.'"). Much of Carrera's testimony was corroborated by the testimony of other witnesses, the defendants' own statements, and wiretap interceptions. The fact that portions of Carrera's testimony are uncorroborated is not fatal, especially as Carrera was subject to extensive cross-examination at trial.

Macias and Gandara finally maintain that due process requires the government to prove beyond a reasonable doubt the quantity of drugs attributable to them. We ordinarily apply a preponderance of the evidence standard to such findings. The defendants urge that applying the preponderance standard here allows the government to obtain a mandatory life sentence without complying with the stricter burden of proof employed in other mandatory life cases. They argue that the need for the stricter standard of proof is

particularly compelling in a case in which only forty-five kilograms of cocaine were actually seized.

It is well-established that the preponderance standard is the applicable standard for sentencing purposes. United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991); United States v. Billingsley, 978 F.2d 861, 866 (5th Cir. 1992), cert. denied, 113 S. Ct. 1661 (1993). The defendants cite no authority holding that a different standard should apply under these circumstances. In fact, we recently rejected an argument involving similar facts. See United States v. Mergerson, 4 F.3d 337, 344 (5th Cir. 1993), cert. denied, 114 S. Ct. 1310 (1994) (rejecting application of reasonable doubt standard to quantity finding that required mandatory life sentence without possibility of release).

Nor is it significant that only forty-five kilograms were seized. The guidelines specifically state that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, comment. (n.12). We therefore conclude that the court properly calculated the amount of drugs attributable to Macias and Gandara.

B. Weapon Enhancement

Macias challenges the district court's finding that a two-level enhancement was warranted for the possession or use of a dangerous weapon on the drug conspiracy counts, the kidnapping counts, and the telephone counts. The district court's

22

determination that a weapon was present and that its possession by a co-conspirator was foreseeable is a factual finding reviewable for clear error.[5]

The district court applied the enhancement to the drug conspiracy counts pursuant to U.S.S.G. § 2D1.1(b)(1). The increase applies if a dangerous weapon was possessed during the course of manufacturing, importing, exporting, or trafficking in narcotics, including attempting or conspiring to do so. Id. If only a coconspirator possessed a dangerous weapon, the enhancement applies if his possession was reasonably foreseeable to the defendant. Sparks, 2 F.3d at 586-87. A court "'may ordinarily infer that a defendant should have foreseen a codefendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed a weapon while he and the defendant committed the offense.'" Id. (quoting United States v. Aquilera-Zapata, 901 F.2d 1209, 1215 (5th Cir. 1990)).

The district court expressly stated that it was basing the enhancement on a confrontation between Macias and Alejandro Navarro regarding missing proceeds from a drug transaction. Navarro testified that he saw a gun in the belt of Julio Bustillos, who accompanied Macias to the confrontation.

Macias argues that the enhancement should not have been applied because "Navarro did not testify that Macias possessed a

---

[5] United States v. Sparks, 2 F.3d 574, 587 (5th Cir. 1993) (foreseeability), cert. denied, 114 S. Ct. 720, and cert. denied, 114 S. Ct. 899, and cert. denied, 114 S. Ct. 1548 (1994); United States v. Fierro, 38 F.3d 761, 775 (5th Cir. 1994) (presence of weapon), cert. denied, 115 S. Ct. 1388, and cert. denied, 115 S. Ct. 1341 (1995).

23

weapon, knew that [Bustillos] had a gun, or was in a position to have seen that [Bustillos] possessed a gun." Even if Macias did not know that Bustillos was carrying a gun, however, the court could properly infer, from the fact that Bustillos actually had a gun, that he could have reasonably foreseen that Bustillos would have one. Sparks, 2 F.3d at 586-87.

Macias also complains that the court improperly applied the enhancement to the telephone counts. We cannot determine whether the enhancement should have been applied, however, because the district court applied the wrong sentencing guideline. The court adopted the PSR's recommendations in toto on the telephone counts, although the PSR applied U.S.S.G. § 2E1.4 to those counts. That section determines the sentence for violations of 18 U.S.C. § 1958 (prohibiting the use of interstate facilities in the commission of murder-for-hire). The PSR should have applied U.S.S.G. § 2E1.2, which controls the sentence for violations of 18 U.S.C. § 1952 (prohibiting the use of interstate facilities in aid of a racketeering enterprise). We therefore vacate Macias's sentence on counts ten and eleven and remand for resentencing under U.S.S.G. § 2E1.2.

Macias finally attacks the district court's finding that an enhancement was appropriate with respect to the kidnapping counts. U.S.S.G. § 2A4.1(b)(3) provides for a two-level enhancement for use of a dangerous weapon in kidnapping, abducting or unlawfully restraining another. "'A dangerous weapon was used' means that a firearm was discharged . . . or 'otherwise used.'" Id. at § 2A4.1,

24

comment. (n.2). "'Otherwise used' means . . . that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying or possessing a firearm or other dangerous weapon." Id. at § 1B1.1, comment. (n.1(g)).

The kidnapping counts were based on the abduction of Ricardo Olivares and Humberto Adame. The government presented evidence that Adame was hit with a gun and that Olivares had a gun put to his back. It was not clear error for the district court to enhance Macias's sentence on this basis.

C. Enhancement for Restraint of Victim

Macias and Gandara next complain that the district court erred by applying a two-level enhancement to their sentences on the conspiracy counts for the physical restraint of a victim. U.S.S.G. § 3A1.3 authorizes a two-level enhancement "[i]f a victim was physically restrained in the course of the offense." The defendants argue that the enhancement should not apply to them for two reasons. First, the persons physically restrained were not "victims," but coconspirators. Second, it would be impermissible double counting to apply the enhancement for unlawful restraint and also to sentence the defendants for kidnapping.

The first argument rests on an narrow construction of the term "victim" in § 3A1.3. The defendants read "victim" to mean "victim of the offense." We agree that Olivares and Adame were not "victims" of the conspiracy offense, and if we read § 3A1.3 to mean "victims of the offense," the enhancement could not apply. The

25

plain language of § 3A1.3 refers only to "victims," however, and we believe this means any "victim" of restraint. See United States v. Vought, 69 F.3d 1498, 1502 (9th Cir. 1995) (interpreting § 3A1.3 in same manner). We also note that the guidelines do frequently use the term "victim of the offense," leading us to believe that the Sentencing Commission may have deliberately chosen not to use that phrase here.[6] The court correctly applied the enhancement because Olivares and Adame were "victims" of unlawful restraint.

The defendants further argue that application of the enhancement to the drug conspiracy counts is impermissible double counting because they also received sentences on the kidnapping counts. They rely on United States v. Harris, 959 F.2d 246 (D.C. Cir.), cert. denied, 113 S. Ct. 362, and cert. denied, 113 S. Ct. 362, and cert. denied, 113 S. Ct. 364 (1992), and on application note 2 to U.S.S.G. § 3A1.3 to support their proposition.

This argument is without merit. Application note 2 states:

> Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of the victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction or Unlawful Restraint)).

U.S.S.G. § 3A1.3, comment. (n.2). Unlawful restraint is not an element of conspiracy to import or distribute drugs, the offense for which the defendants were sentenced. Application note 2 is

---

[6] See, e.g., U.S.S.G. § 3A1.1 (two-level increase "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable") (emphasis added); § 3A1.2, comment. (n.1) (three-level increase for official victim applies "when specified individuals are victims of the offense") (emphasis added).

therefore inapplicable.

Nor does <u>Harris</u> support the defendants' argument.  <u>Harris</u> held that an enhancement for possession of a firearm during a drug conspiracy did not apply to a defendant who received a separate sentence for using or carrying a firearm during a drug conspiracy. <u>Harris</u>, 959 F.2d at 266-67.  The court relied upon U.S.S.G. § 2K2.4, comment. (n.2), which states:

> Where a sentence under this section [for carrying or using a firearm during a crime] is imposed in conjunction with a sentence for an underlying offense [the drug conspiracy], any specific offense characteristic for the possession, use, or discharge of an explosive or firearm . . . is not to be applied in respect to the guideline for the underlying offense.

In contrast, the enhancement for victim restraint is prohibited only where "unlawful restraint of the victim is an element of the offense itself."  U.S.S.G. § 3A1.3, comment. (n.2).

Double counting is impermissible only where the guidelines at issue prohibit it.  <u>United States v. Box</u>, 50 F.3d 345, 359 (5th Cir.), <u>cert. denied</u>, 116 S. Ct. 309 (1995), <u>and cert. denied</u>, 64 U.S.L.W. 3466 (U.S. Jan. 8, 1996); <u>United States v. Godfrey</u>, 25 F.3d 263, 264 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 429 (1994).  The guidelines at issue in <u>Harris</u> did specifically forbid double counting, but § 3A1.3 does not.[7]

## D.  Enhancement for Role in Conspiracy

---

[7]     This result is hardly unfair to the defendants.  Because their sentence on the kidnapping counts runs concurrently with their sentence on the conspiracy counts, and is less than the sentence on the conspiracy counts, it is only through the enhancement to the conspiracy counts that the defendants will suffer any penalty for the kidnapping.

Macias and Gandara contest the four-level enhancement on all counts for their leadership roles in the offenses. See U.S.S.G. § 3B1.1(a). We review for clear error the finding that the defendants were leaders or organizers of the conspiracy. United States v. Ayala, 47 F.3d 688, 689-90 (5th Cir. 1995).

Both defendants argue that they could not have occupied leadership roles in the conspiracy because others were above them in the hierarchy of the conspiracy. Gandara maintains that he was simply a bookkeeper until his brother Jose Luis died in January 1991. Macias argues that he was subordinate to both Jose Luis and Rene Gandara.

More than one person can qualify as a leader or organizer of a conspiracy. U.S.S.G. § 3B1.1, comment. (n.4). During the course of the trial, the government introduced significant evidence that both Macias and Gandara exercised extensive control over others in the organization, directing them in the distribution of the cocaine, the collection of the proceeds, and the kidnapping and intimidation of others. This evidence was sufficient to support the determination that they were organizers or leaders of the conspiracy.

E.  Refusal To Grant Downward Departure

Macias and Gandara argue that the district court incorrectly believed that it lacked the authority to depart downward in sentencing. See United States v. Stewart, 37 F.3d 1449, 1450 (10th Cir. 1994); United States v. Isom, 992 F.2d 91, 93 (6th Cir. 1993).

28

At sentencing, they urged the district court to depart downward. The district court declined to do so, stating:

> As far as the departure request, and also the alternative request that the Court recommend executive clemency . . . . I don't anticipate doing either one of those things. On the contrary, I anticipate imposing sentence within the guideline range on all of the various counts.

In light of this statement, we conclude that the court did recognize its authority to depart downward.

F.  Imposition of Life Imprisonment on Counts Ten and Eleven

The district court imposed a life sentence on Macias with respect to counts ten and eleven, although the maximum penalty for those offenses is imprisonment for five years. 18 U.S.C. § 1952. The government concedes error, so we vacate Macias's sentence with respect to those counts and remand for resentencing for a period of no more than five years.

G.  The Sentencing of Gaytan as a Minor Participant

Gaytan asserts that the district court erred in finding that he was a "minor participant" in the conspiracy under U.S.S.G. § 3B1.2(b) rather than a "minimal participant" under U.S.S.G. § 3B1.2(a). As a result, he received only a two-point reduction in his base offense level rather than the four-point reduction afforded a "minimal participant."

The district court's finding on this issue is a factual determination reviewed only for clear error. United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995). The Sentencing

Guidelines indicate that the downward adjustment for minimal participation "will be infrequent[]" and cites as appropriate examples of minimal participants "someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment" or "an individual [who] was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). In contrast, "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.3).

The district court's finding that Gaytan "len[t] his property to be used for the storing of drugs" and "acted as a chauffeur" to carry people to where drugs were stored is supported by the record. Given these findings, it was not clear error for the court to conclude that Gaytan was a minor participant rather than a minimal participant.

Macias's conviction on all counts except count six is AFFIRMED. Macias's sentence on all counts except counts ten and eleven is AFFIRMED. Gandara's conviction and sentence on all counts except count four are AFFIRMED. Gaytan's conviction and sentence are AFFIRMED. Macias's conviction on count six and Gandara's conviction on count four are REVERSED. Macias's sentence on counts ten and eleven is VACATED and REMANDED for resentencing.