**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 27, 2012

No. 10-10496

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOHN REGINALD HOLT; HERBERT PHILIP ANDERSON,

Defendants-Appellants

Appeals from the United States District Court
for the Northern District of Texas
(4:09-CR-115)

Before DAVIS, OWEN, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, CIRCUIT JUDGE:[*]

Defendants-Appellants John Reginald Holt and Herbert Phillip Anderson, along with numerous co-defendants, were charged with conspiring to distribute and possess with intent to distribute more than 500 grams of methamphetamine (count one), in violation of 21 U.S.C. § 846. Anderson was also charged in count four with money laundering in violation of 18 U.S.C. 1956(a)(1)(B)(i) and in count five with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Holt and Anderson were tried along with co-defendant Murphy. Murphy was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10496

acquitted on the drug conspiracy charges in count one, while Holt and Anderson were convicted on this count. Anderson was acquitted of the money laundering charge in count four, but convicted of the money laundering charge in count five. Anderson appeals his conviction and sentence. Holt appeals his sentence only. For the reasons stated below, we affirm.

I.

During the three day jury trial, the government presented evidence that established the existence of a large drug conspiracy involving the distribution of methamphetamine headed by Thomas Gerry. Gerry was a long-time friend of Anderson. After Gerry was released from prison on parole in January 2005, he moved into an apartment located above Anderson's three-car garage. Anderson testified that he kicked Gerry out in February 2006, because his wife was tired of having Gerry there and because he heard rumors that Gerry was back in the drug business. In 2008 a confidential informant purchased drugs from Gerry and Holt at Gerry's new residence. After the purchase, the DEA had local law enforcement stop individuals leaving Gerry's residence for traffic violations, resulting in the discovery and seizure of meth on multiple occasions.

The following evidence links Anderson to the conspiracy. While Gerry was living at Anderson's apartment, Farrell Coleman (a co-defendant who pled guilty) went to see Gerry at Gerry's request. Coleman and Gerry knew each other from prison and Gerry was hiring Coleman to sell drugs. As Coleman was going up the stairs to the apartment, Anderson was coming down. When Coleman arrived upstairs, he saw meth in ounce-sized packages covering the pool table. The implication is that Anderson must have known the drugs were there.

Robert Leslie Bays, another co-defendant who pled guilty, testified that he began selling meth for Gerry in the summer of 2008. When Bays met Anderson

2

at a Christmas party at Gerry's house, Anderson told him that he "didn't have nothing to worry about; he was in the family now."

On June 5 and 6, 2009, Anderson arranged to borrow $160,000 from Gerry to purchase the building housing one of his nightclubs. Text messages between them indicate that Anderson needed the money urgently to prevent the building from being sold to someone else. Gerry's text messages to Anderson stated that giving him that much cash would leave him "pretty dry . . there's the end of my reloading money there." Gerry reminded Anderson that Anderson was already holding $50,000 that belonged to Gerry. Anderson promised to double Gerry's money and agreed that they would be partners. Gerry delivered $160,000 cash in a box to Anderson, which Anderson stored in his safe. The building purchase later fell through.

Around the same time on June 5th, agents place Gerry and Anderson in the same house at the same time Gerry talked by phone with Stephen Adams, another co-defendant, about counting drug money. Also on June 5, 2009, Adams testified that Gerry told him to bring all the cash he had to Gerry's house. When he arrived, Gerry, Anderson, Gerry's girlfriend and a person he knew as Medina were there in the same room. Medina was identified as a drug supplier. Adams threw the money he had in an envelope on the table. Gerry threw Adams a Walmart bag that contained a kilo of meth. Adams left the room to weigh and test the drugs. When the drugs tested ok, Adams returned to the kitchen and gave the group a thumbs up.

A conversation ensued between Gerry and Medina. Adams testified that Anderson interpreted a statement in English by Gerry into Spanish for Medina. Adams heard something about Gerry being $4,000 short, after which Anderson said something in Spanish to Medina. Then Medina replied "no problema."

On June 10th, Gerry was attempting to make another drug buy but did not have enough cash. He texted Anderson telling him that he was "in great need

of box at your place." Gerry and Anderson exchanged texts about how much Gerry needed, although there was no indication at that point what the cash was for. In a series of text messages, the amount Gerry wanted to retrieve rose from $20,000 to $40,000. Gerry went to Anderson's house to pick up the cash. After retrieving the cash, Gerry borrowed Anderson's Ford Excursion which he used to travel to the site of the drug buy. Gerry used the cash he picked up from Anderson to purchase meth.

On June 11th, Anderson and Gerry exchanged more text messages. Gerry's texts to Anderson mentioned that he was meeting with Tango Blast, which a government agent identified as a Hispanic street gang. Later he texted Anderson that he was going to need his cash because he was "Dealing on some stocks, spose to double two weeks." Gerry sent someone to pick up the cash, which was "All the box and ten more if handy." The box contained the $160,000 Gerry had earlier lent Anderson when he was attempting to purchase the building. Evidence at trial established that Gerry used $60,000 of the funds retrieved from Anderson to purchase 2 kilos of methamphetamine from the Cruz brothers. These funds form the basis of the money laundering charge in count five.

In addition, Anderson's holding company, Tazz Man, Inc., was the subscriber for Gerry's phone and Tazz Man paid Gerry a relatively small salary from 2007 to 2009 to satisfy the parole requirement that Gerry be gainfully employed. Gerry used Anderson's address as his own.

Anderson testified that he knew Gerry was a drug dealer, but that Gerry did legitimate work for him in his businesses. Anderson borrowed funds from Gerry to attempt to purchase the building because he thought Gerry had cash. At the time Anderson already was holding $50,000 for Gerry.

The jury convicted Anderson on count one, the drug conspiracy, and count five, a money laundering charge arising out of the June 11th delivery of $60,000

No. 10-10496

to Gerry. He was acquitted on the money laundering charge in count four, which related to the $160,000 he borrowed from Gerry. Holt was also convicted on count one. Holt was sentenced to 360 months imprisonment and a five year term of supervised release. Anderson was sentenced to 360 months on count one and 240 months imprisonment on count five, to run concurrently for a term of 360 months. Anderson's sentence fell below the guideline range of life imprisonment. Holt's sentence fell at the bottom of his guideline range of 360 months to life. Anderson appeals his conviction and sentence. Holt appeals his sentence.

## II.

Anderson argues first that there was insufficient evidence to support his conviction on the drug conspiracy charge. Anderson moved for a judgment of acquittal at the close of the government's case-in-chief and again after the close of the evidence. Accordingly, we review the district court's denial of his motions of acquittal de novo, considering the evidence in the light most favorable to the government. *United States v. Campbell*, 52 F.3d 521, 522 (5th Cir. 1995).

The elements of the offense of conspiracy to distribute and to possess with intent to distribute drugs are (1) an agreement between two or more person to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy. *United States v. Booker*, 334 F.3d 406, 409 (2003). The government was also required to prove the drug quantity involved in the conspiracy as alleged in the indictment, i.e. more than 500 grams of methamphetamine. *United States v. DeLeon*, 247 F.3d 593, 596 (5th Cir. 2001).

Anderson does not contest that the evidence established a drug conspiracy centered around Gerry involving more than 500 grams of meth. He argues that the evidence does not show his agreement to violate the narcotics laws or participate in the conspiracy. Based on our review of the record, the government clearly presented sufficient evidence from which the jury could find that

No. 10-10496

Anderson voluntarily participated in the drug conspiracy. Anderson (1) permitted Gerry to store drugs and conduct drug transactions in the apartment above his garage, (2) held Gerry's drug proceeds for safekeeping and for use in future drug transactions, (3) provided transportation and a phone for Gerry's use, (4) helped Gerry comply with parole by providing employment and paying him for work he did not perform, and (5) provided translation services to facilitate a drug transaction between Gerry and Medina.

Anderson relies on several cases establishing that mere presence at the time of the transaction or helping a friend in need is not enough to establish participation in a drug conspiracy. *See United States v. Carrasco*, 830 F.2d 41, 45 (5th Cir. 1987); *United States v. Maltos*, 985 F.2d 743, 747 (5th Cir. 1992); *United States v. Sacerio*, 952 F.2d 860, 864 (5th Cir. 1992); *United States v. Ross*, 58 F.3d 154, 159 (5th Cir. 1995). We agree that some of the facts connecting Anderson to Gerry in isolation (letting Gerry live in the apartment or giving him a job or loaning him a car) would be insufficient to establish Anderson's participation in a drug conspiracy. However, the evidence as a whole gave the jury a clear basis on which to conclude that Anderson not only knew about Gerry's activities but participated in furthering them.

III.

Anderson also asserts that there was insufficient evidence to support his conviction on the money laundering charge. To sustain a conviction for money laundering under section 1956(a)(1)(A), the statute of conviction on count five, the government must prove that "(1) the financial transaction in question involves the proceeds of unlawful activity, (2) the defendant had knowledge that the property involved in the financial transaction represented proceeds of an unlawful activity, and (3) the financial transaction was conducted with the intent to promote the carrying on of a specified unlawful activity." *United States*

No. 10-10496

*v. Valuck*, 286 F.3d 221, 225 (5th Cir. 2002). Anderson challenges his conviction on money laundering on several bases.

First, Anderson asserts that the government failed to prove the occurrence of a financial transaction. A financial transaction under 18 U.S.C. § 1956 is "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments." 18 U.S.C. § 1956 (c)(4). A "transaction" under the statute "includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected." 18 U.S.C. § 1956 (c)(3).

> For something (not involving a financial institution or its facilities) to be a transaction, it must be a 'disposition.' 'Disposition most commonly means 'a placing elsewhere, a giving over to the care or possession of another.'" Id. (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1961)).

*United States v. Gaytan*, 74 F.3d 545, 555 (5th Cir. 1996).

Anderson argues that by holding cash for Gerry and returning it later he was simply a bailee for Gerry and thus there was no transaction. The closest case cited by either party is *Gaytan*. *Id.* The relevant count in *Gaytan* related to $2 million in drug proceeds that defendant Macias received from Navarro. Macias stored the funds at co-defendant Gaytan's residence. Although the facts are not entirely clear, the opinion says "that Navarro later retrieved the money" and also that "[b]y delivering the proceeds to Gaytan's residence for storage and later to Navarro at Sunset Motors, Macias effected a 'placing elsewhere' or 'giving over to the care and possession of another' sufficient to establish a

disposition of the funds." *Id.* at 556.   Macias's conviction of money laundering on this count was affirmed.  The facts in this case are not materially different. Anderson accepted two amounts from Gerry to store – the initial deposit of $50,000 and the $160,000 as a loan from Gerry that he intended to use to purchase a building.  Gerry delivered the funds to Anderson at his home.  A week or so later, Gerry returned  and Anderson gave Gerry $40,000 of those funds.  The next day, Anderson returned the remaining amount.  As in *Gaytan*, Anderson received funds from Gerry, stored it and later returned it to Gerry, the person he got it from originally.  This scenario was sufficient to constitute a disposition in *Gaytan*.  We see no reason to treat the facts any differently in this case.

Anderson also argues that there was no evidence to establish his specific intent to promote the unlawful activity.  The proof requirement for this element is substantial.

> It is not enough to show that a money launderer's actions resulted in promoting the carrying on of specified unlawful activity.  Nor may the government rest on proof that the defendant engaged in "knowing promotion" of the unlawful activity.  Instead, there must be evidence of intentional promotion.  In other words, the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it with the intent to further the progress of that activity.

*United States v. Trejo*, 610 F.3d 308, 314 (5th Cir. 2010)(internal citations omitted).  Our case law is clear that when the proceeds of drug trafficking activity are used to purchase more drugs to sell, such evidence satisfies the promotion requirement. *United States v. Brown*, 553 F.3d 768, 786 (5th Cir. 2008).  The evidence establishes beyond dispute that Gerry used $60,000 of the funds he retrieved from Anderson to purchase drugs from the Cruz brothers. The jury could infer that Anderson knew that was Gerry's intent and provided the funds to promote their drug conspiracy based on evidence presented of text

No. 10-10496

messages that Gerry sent to Anderson before he picked up the funds. In the messages, Gerry refers to "Tango Blast" which a government witness identified as a Hispanic street gang. Gerry also said "I'm gonna need my $. Dealing on some stocks spose to double 2 wks." Since Anderson testified that he knew Gerry dealt drugs and based on the other evidence of Anderson's involvement in the drug enterprise, a jury could reasonably infer that Anderson understood Gerry's intended use of the funds and intended to promote that activity.

Anderson also argues that there was no evidence that the cash he delivered to Gerry represented profits as opposed to receipts from an unlawful activity, relying on *United States v. Santos*, 553 U.S. 507, 514 (2008). However, this circuit has held that proceeds in this context includes all receipts of a drug operation. *Wilson v. Roy,* 643 F.3d 433, 437 (5th Cir. 2011)*; Garland v. Roy*, 615 F.3d 391, 399 (5th Cir. 2010). It is also clear that the jury could conclude that the funds in question were in fact drug proceeds. Based on the ample evidence of Gerry's prior drug activities, the jury could easily conclude that both the $50,000 Anderson was holding for Gerry and the $160,000 he borrowed to purchase the building were proceeds from earlier completed drug transactions.

Based on this analysis, the evidence was sufficient to support Anderson's conviction for money laundering on count five.

## IV.

Anderson complains that the district court abused its discretion by limiting closing argument to five minutes per defendant. After a three day trial, the district court asked the parties whether they would be able to complete closing arguments in "the customary seven minutes." The government requested ten minutes, which the court granted. The district court then stated that the three defendants would divide 12 minutes, four for each. Counsel for Anderson requested five minutes because "mine was a little bit more involved." The court granted his request.

9

No. 10-10496

District courts are granted substantial discretion in placing time limits on closing arguments. *United States v. Okoronkwo*, 46 F.3d 426, 437 (5th Cir. 1995). The limitation placed on Anderson's counsel in this case arguably crosses that line. The trial in this case, even with the district court's strong restrictions on questioning witnesses, lasted over 27 hours over three days. The parties presented 25 witnesses and submitted almost 200 exhibits, including 164 wiretap sessions. Unlike his two co-defendants, Anderson was charged in two money laundering counts in addition to the charge of drug conspiracy. This situation would require Anderson's counsel to attempt to isolate his client's involvement from the drug conspiracy and also address two additional counts that the other defendants would not need to discuss.

> As we have previously stated -

> We want to make it clear that in multiple-count, multiple defendant criminal cases tried *en masse*, especially those involving complex factual scenarios, trial courts should be mindful that each defendant should be given adequate time to mete out the evidence and issues particular to that defendant and individualize his/her defense to the jury.

*Id.* For example, in similar challenges to limitations to closing arguments we have noted that the "judge asked both sides how much time they required for closing and listened to discussion on the point." *United States v. Bernes*, 602 F.2d 716, 722 (5th Cir. 1979). No such discussion was conducted by Judge McBryde in this case. Rather he attempted to impose his "customary seven minutes" for closing with no consideration of the particular facts of the case or the arguments of the individual defendants. In fact, the time allowed in this case for closing is half the length of the shortest closing this court has considered in prior opinions on this topic. In *United States v. Moye*, 951 F.2d 59, 63 (5th Cir. 1992), the defendant argued that the district court erred by limiting his closing argument to ten minutes. Even in that single issue case tried in two days, we noted that

10

No. 10-10496

the "maximum time granted counsel for argument in this case was indeed short, probably a shorter limit than we would have established." *Id.*

Despite our strong disagreement with the district court's severe limit on counsel's time for closing argument and although it is not free from doubt, we conclude that the record does not permit us to find that the district court plainly erred. *United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997)("defendants failed to object to the court's time limits [on closing arguments], leaving them the difficult task of showing 'plain error' on review.") Anderson's attorney did not request additional time at the close of his argument. *See Bernes*, 602 F.2d at 722; *United States v. Leal*, 30 F.3d 577, 586 (5th Cir. 1994). In addition, Anderson made no offer of proof as to what arguments he was foreclosed from making in his abbreviated closing argument and does not state on appeal how his argument would have been different if allowed additional time. *United States v. Sotelo*, 97 F.3d 782, 794 (5th Cir. 1996). Without an argument that would establish prejudice, we are unable to find plain error, despite our opinion that the district court unfairly restricted counsel's closing argument in this case.

V.

Anderson argues next that the district court erred by giving the jury a deliberate indifference instruction.[1] We need not decide whether the instruction was appropriate, because any error was harmless. An error in giving a deliberate indifference instruction is harmless where substantial evidence of the defendant's actual knowledge is presented. *United States v. Delgado*, 672 F.3d

---

[1] The instruction read -

You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

11

No. 10-10496

320, 340 (5th Cir. 2012).   Anderson admitted that he actually knew about Gerry's drug activities.   Accordingly, any error in the instruction is harmless.

VI.

Anderson argues finally that the district court made several errors in the sentencing process.   Since Anderson's counsel made only a general objection to the reasonableness of the sentence and did not object on any specific procedural ground, procedural reasonableness claims based on erroneous fact findings are reviewed for plain error. *United States v. Dunnigan*, 555 F.3d 501, 506 (5th Cir. 2009).

Anderson argues first that the district court erred in the determination of the drug quantity for sentencing purposes.   Anderson's counsel objected to the initial determination that Anderson should be held accountable for all of the drugs attributed to the conspiracy, 173.83 kilograms.   The district court ultimately concluded that Anderson should be held accountable for at least five kilograms of meth, giving him the benefit of the doubt.   Anderson's counsel made no further objection to the drug quantity.   In a strikingly similar case, this court has held that in such circumstances the quantity of drugs attributed to the defendant can never constitute plain error. *United States v. Fierro*, 38 F.3d 761, 773 (5th Cir. 1994). In *Fierro*, one of the defendants objected at sentencing to the PSI's determination that he was responsible for the entire 178 kilograms attributed to the conspiracy.   The defendant argued to the court that the base offense level should be 36, rather than 38.   The district court sustained his objection and the final judgment reflected the requested offense level of 36.

> Because Serna's objection to quantity at sentencing was determined in his favor and he did not make a further objection, we find that Serna may not make a further challenge to the quantity of cocaine attributed to him at sentencing.

12

*Id.* Similarly, Anderson's objection to the drug quantity was resolved in his favor and he failed to further object to the final drug quantity determination of 5 kilograms. His argument on this point is without merit.

Anderson argues next that the district court erred in applying a strict liability standard in its application of U.S.S.G. §2D.1.1.

U.S.S.G. § 2D1.1(b)(4) states -

If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals **that the defendant knew were imported unlawfully**, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels.

18 U.S.S.G. Appx. § 2D1.1. Contrary to Anderson's argument, this court has recently decided that

the plain language of § 2D1.1(b)(5) unambiguously limits the qualification, "that the defendant knew were imported unlawfully," to such contraband that was manufactured from one or more of the listed chemicals; it does not apply to "the importation of amphetamine or methamphetamine," i.e., the end products of such manufacturing. We reach this conclusion by applying the basic rules of English grammar.

*United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). Accordingly, Anderson's argument that the district court applied an improper knowledge requirement is without merit when no knowledge on his part is required by the provision. *Id.* at 552.

Anderson argues next that the district court improperly denied him a reduction for his role in the offense where the court viewed the issue through the prism of drug-trafficking, rather than money laundering. Anderson did not object to the presentence report's failure to recommend an adjustment for his role in the offense, nor did his trial counsel request a downward adjustment

No. 10-10496

before the district court. Therefore, we review for plain error. *United States v. Martinez-Larraga*, 517 F.3d 258, 272 (5th Cir. 2008). The district court's determination that a defendant did not play a minor or minimal role in the offense is a finding of fact. *United States v. Villanueva*, 408 F.3d 193, 203 & n. 9 (5th Cir. 2005). "Questions of fact capable of resolution upon proper objection at sentencing can never constitute plain error." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991).

Anderson argues next that the district court erred by applying an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Generally, it is proper for the district court to enhance a defendant's sentence under this section when the defendant committed perjury by giving false testimony at trial. See U.S.S.G. §3C.1.1, comment (n.4(B))(listing of nonexhaustive examples of obstruction including "committing, suborning, or attempting to suborn perjury"). As pointed out by the government, the district court could conclude from the trial testimony that Anderson gave false testimony on several points – including whether he knew Medina, whether he was present at Gerry's residence on June 5 when a drug transaction occurred and whether he speaks Spanish. The application of this enhancement was not error.

VII.

Both defendants challenge their sentences as substantively unreasonable. This court reviews a challenge to the substantive reasonableness of a sentence in light of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011). Where a proper objection is made, within-guidelines sentences enjoy a presumption of reasonableness and are reviewed for abuse of discretion. *Id.*

Anderson's guideline range was life on count one and 240 months on count five. The district court granted his motion for a downward departure and sentenced him to 360 months on count one and 240 months on count five to run

No. 10-10496

concurrently. Accordingly, the sentence is presumptively reasonable. Anderson makes no argument that the district court improperly considered the § 3553(a) factors or gave consideration to an improper sentencing factor. There is no basis to overturn Anderson's sentence.

Holt's guidelines range was 360 months to life. The district court imposed a sentence of 360 months, at the bottom of the guidelines range. Holt's arguments that the sentence is unreasonable because of his age (54) and minor criminal history and because prisons are overcrowded raise no basis to overturn his presumptively reasonable guidelines sentence.

## VIII.

For the reasons stated above, we affirm Anderson's conviction and sentence and defendant Holt's sentence. AFFIRMED.