**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert D. STEWART, Defendant–Appellant.**

No. 94–4048.

United States Court of Appeals, Tenth Circuit.

Oct. 14, 1994.

Hakeem Ishola (Earl Xaiz, on the briefs), of Yengich, Rich & Xaiz, Salt Lake City, UT, for defendant-appellant.

Matthew R. Howell, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., and Paul M. Warner, Asst. U.S. Atty., on the brief), Salt Lake City, UT, for plaintiff-appellee.

---

Before ANDERSON, McKAY, and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

■ The defendant, Mr. Stewart, appeals the sentence imposed on him for illegally possessing and transferring a machine gun, in violation of 18 U.S.C. §§ 922(*o*) and 924(a)(2). Mr. Stewart claims in his appeal that the sentencing judge, believing he had no discretion at all, improperly failed to exercise the discretion available to him to give a downward departure from the sentencing guidelines. In a recent case, we observed, "the district courts have become more experienced in applying the Guidelines and more familiar with their power to make discretionary departure decisions under the Guidelines." *United States v. Barrera–Barron,* 996 F.2d 244, 246 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 358, 126 L.Ed.2d 321 (1993). Thus, there must be substantial evidence in the record to support a claim that the trial court misunderstood the extent of its discretion. *See United States v. Rodriguez,* 30 F.3d 1318 (10th Cir.1994). Our review of the transcript of the sentencing hearing reveals some ambiguity, but, taken as a whole, indicates that the court fully understood the extent of its discretion and properly exercised it.

The facts in this case are undisputed. Mr. Stewart, a gun collector, was requested by undercover police officers to obtain and deliver to them five World War II era "sten" machine guns, purportedly to be sold to another gun collector. Mr. Stewart purchased gun kits through a mail order magazine, constructed the guns, and delivered them as specified.

At the sentencing hearing, Mr. Stewart argued that he should receive a downward departure under § 5k2.11. This section, known as the "intended use" exception, allows a downward departure where the conduct does "not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." United States Sentencing Comm'n Guidelines Manual, § 5k2.11, at 368–69 (1994). Mr. Stewart argued that his conduct fell within this exception because he thought the guns were going to a legitimate collector, and because the type of gun involved is not an effective weapon and is generally purchased solely as a collector's item. For these reasons, Mr. Stewart did not believe that any violent crimes and/or loss of human life would result from his sale of the weapons.

Some of the court's language could be read to suggest that the court gave inadequate consideration to this argument. However, read in its entirety, the transcript of the sentencing hearing reveals that the court fully understood the nature of its discretion and gave full consideration to Mr. Stewart's arguments before ultimately rejecting them.

Mr. Stewart's counsel points out several excerpts from the sentencing hearing transcript that he claims indicate the court's refusal to consider his motion. Most notably, the court seemed at one point to suggest that § 5k2.11 was "mere verbiage."

> Mr. Xaiz: (Referring to another case) It expressly relied on 5k2.11 which again is the lesser harms section that talks about the fact that—and this, I believe, Your Honor, is the basis for making exception to the rule in this case, is that his conduct did not violate the spirit of the law or, as they say in the guideline, did not threaten the harm sought to be avoided here.
>
> THE COURT: Well, now, he either violated the statute or he didn't.
>
> Mr. XAIZ: He did violate the statute.
>
> THE COURT: Then we ought not to temper something like that with what is essentially verbiage. It seems to me that we've either got a statutory violation or we haven't.

Transcript of Proceedings—Sentencing, at 13–14.

The court also used language such as "I'm required" and "I have no choice." It is clear from the context, however, that these words indicate the court's general dissatisfaction with the sentencing guidelines rather than a misapprehension of them.

The bulk of the evidence indicates that the court gave full consideration to Mr. Stewart's motion, and indeed was looking for a way to reduce his sentence. After counsel's initial explanation of the motion, the court stated,

"I haven't seen anything here in a specific nature that I can use as a basis for a finding." Tr. at 12. Shortly thereafter, the court told counsel, "it's your job to assist me in giving me a basis for making findings as to matters not considered by the Sentencing Commission." Tr. at 14.

The court went to considerable lengths to explore the merits of Mr. Stewart's claims, asking a number of questions designed to elicit responses that would establish the appropriateness of applying the intended use/lesser harms exception.

THE COURT: Now, this defendant was a collector?

Mr. Xaiz: Yes, Mr. Stewart was a collector.

THE COURT: But in this instance, he wasn't acting as a collector.

Mr. Xaiz: That's correct, Your Honor.

THE COURT: How many guns did he modify?

Mr. Xaiz: There were five.... He constructed five guns.

THE COURT: And he sold five guns?

Mr. XAIZ: That's correct.

Tr. at 7–8.

After asking counsel to recapitulate his argument on § 5k2.11 ("Okay. Now, tell me again your theory on that." Tr. at 15), the court made several comments which revealed that it did not think that a downward departure was appropriate under this exception.

When told that Mr. Stewart believed that the gun would not be used on the street, the court asked, "How does he know?" The court continued, "You put it (a gun) in commerce. It's going to end up somewhere, and it isn't necessarily going to end up in a file case someplace or display case somewhere." Tr. at 17. Upon being told that it wasn't a functional weapon, the court remarked, "I take it it shoots live bullets." Tr. at 18.

These and other passages from the transcript indicate that the court gave full consideration to Mr. Stewart's argument and properly exercised his discretion to deny the downward departure. Any ambiguities arise from the court's overall discontentment with the guidelines, and clearly do not rise to the level required by *United States v. Rodriguez* for this court to find an abuse of discretion.

The sentence is AFFIRMED.