**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Concepcion HERNANDEZ,
Defendant–Appellant.**

No. 03–1380.

United States Court of Appeals,
Sixth Circuit.

July 8, 2004.

Rehearing En Banc Denied
Sept. 10, 2004.

Julie Ann Woods, Asst. U.S. Attorney, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellee.

Paul L. Nelson, Federal Public Defenders Office, Grand Rapids, MI, for Defendant–Appellant.

Before MARTIN and SUTTON, Circuit Judges; and WILLIAMS, District Judge.*

SUTTON, Circuit Judge.

Juan Concepcion Hernandez, a deported alien who illegally reentered the United States in violation of 8 U.S.C. § 1326(a) and (b)(2), appeals the district court's denial of his request for a downward departure under § 5K2.11 of the Sentencing Guidelines. Because the district court realized its discretion to depart under this Guideline and because it determined that Hernandez did not present a cognizable claim for departure, Hernandez has failed to raise an issue upon which we may grant appellate relief. We affirm.

I.

A Mexican citizen, Juan Concepcion Hernandez first came to the United States in 1963. While in the United States, Hernandez married, had five children and eventually settled in Grand Rapids, Michigan. In 1998, Hernandez and his wife divorced. After the divorce, it appears that the children lived with their mother, though Hernandez retained close relationships with them. Hernandez remarried in early 2001, but has no additional children. His current wife resides in Grand Rapids.

On May 22, 2000, Hernandez pleaded guilty to criminal sexual conduct in the

* The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

second degree. As a result of the conviction, the Government deported Hernandez to Mexico on December 11, 2001. At some point after the deportation, Hernandez learned that his two teenage sons were getting into trouble, living on the streets and not attending school. One son, he learned, was sent to a foster home. Concerned about his sons' welfare, Hernandez illegally reentered the United States in May 2002. He returned to Grand Rapids and, according to Hernandez, helped to address his sons' needs.

On July 3, 2002, Grand Rapids police officers responded to a domestic disturbance report at Hernandez's home and spoke with Hernandez and his current wife. After further investigation, the officers discovered Hernandez's criminal sexual conduct conviction and deportation. On September 26, 2002, police arrested Hernandez for reentering the United States and for doing so after being deported as a result of an aggravated felony conviction, a violation of 8 U.S.C. § 1326(b)(2). Hernandez pleaded guilty to violating 8 U.S.C. § 1326(b)(2).

At sentencing, Hernandez requested a downward departure based on § 5K2.11 of the Sentencing Guidelines, which gives courts discretion to depart where a defendant has committed a crime "in order to avoid a perceived greater harm." In this instance, Hernandez argued that his efforts to look after his children warranted a departure. During the sentencing hearing, the district judge expressed his personal belief that Hernandez deserved a lower sentence but explained that Sixth Circuit precedent precluded him from departing under these circumstances. He sentenced Hernandez to a 46–month prison sentence, the minimum sentence required by the Guidelines. On appeal, Hernandez challenges the district court's refusal to depart downward.

## II.

"We have consistently held that the decision by a district court not to depart downwards from the Guidelines is not reviewable on appeal unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Butler*, 207 F.3d 839, 843 (6th Cir.2000). District judges, we have added, are "now quite familiar with the guidelines, and an appellate court should be reluctant to treat as ambiguous a ruling which does not affirmatively state that the judge knew he could depart downward but failed to do so." *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995) (internal quotations omitted). "Rather [an appellate court] should [ ] assume[ ] that the court, in the exercise of its discretion, found downward departure unwarranted." *Id.* (internal quotations omitted).

Under § 5K2.11, the "Lesser Harms" Guideline at issue, a reduced sentence may be appropriate where "a defendant [ ] commit[s] a crime in order to avoid a perceived greater harm ... provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of mercy killing." Consistent with this language, we have said that a lesser-harms departure "applies only in narrow, extreme circumstances such as mercy killing." *United States v. Barajas–Nunez*, 91 F.3d 826, 832 (6th Cir. 1996). In *Barajas–Nunez*, we noted that a deported alien who returned to the United States to assist his girlfriend who was pregnant with his child while she underwent surgery did not deserve a lesser-harms departure. *Id.*

During the sentencing hearing in this case, the district judge demonstrated an awareness of the standards that governed his discretion to depart in Hernandez's case. He cited § 5K2.11 as the relevant Guideline and read the language of the

Guideline. He then quoted *Barajas–Nunez's* "narrow, extreme circumstances" wording by which he considered himself bound and admitted to having read and reread the opinion. On this record, it is clear that the district judge understood the applicable Guideline provision, the case law construing it and ultimately his limited discretion to depart under the Guideline.

On top of this, the district court described the circumstances in the Hernandez case as being "very similar" to those in *Barajas–Nunez*, a case that the district judge himself had handled. Far from lacking an understanding of his authority to depart, the district judge knew all too well his discretion under the Guideline.

Nor, contrary to Hernandez's argument, does the district court's explanation for its refusal to depart downward alter this conclusion:

> As I reread [*Barajas–Nunez*], even rereading the dissent by Judge Siler, I don't think I have the leeway to grant the motion for a downward departure. I think the Sixth Circuit has told me I don't . . . In my own mind, an appropriate sentence for this offense would be 24 months, that's my mind, but I don't operate as an individual. I operate as part of a legal system and I've been told by the appellate court that's not something I can do. I if I could, I would, but I can't.

JA 34–35. In saying he "wished he could" depart but that he was "told by the appellate court that's not something [he] can do," the district court judge expressed disagreement with this Guideline provision, not a misapprehension of his authority under it. In *United States v. Shabazz*, 263 F.3d 603, 611 (6th Cir.2001), we rejected a similar argument:

> [W]e should not be surprised when, on occasion, a district judge refers in the course of a sentencing hearing to the fact that the prescribed sentence range

requires him to impose a sentence different from one he would impose in the absence of the Guidelines. We will not find, on the basis of such comments—or on the basis of expressions of frustrations with a sentence range prescribed by the Guidelines, such as "my hands are tied by the Guidelines" or "if it were up to me . . ."—that a district judge is unaware of the scope of his authority under the regnant sentencing system.

*Id.* (quoting *United States v. Brown*, 98 F.3d 690, 693–94 (2nd Cir.1996)); *see also United States v. Stewart*, 37 F.3d 1449, 1450 (10th Cir.1994) (The district court's use of the language, " 'I'm required' and 'I have no choice' . . . indicate[d] the court's general dissatisfaction with the sentencing guidelines rather than a misapprehension of them.").

### III.

For these reasons, we affirm.