# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51204

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

OLIVER T. CALDERON, also known as Oliver Calderon,

     Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:14-CV-98

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

     Oliver T. Calderon, federal prisoner # 04345-380, pleaded guilty, pursuant to an agreement, to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The factual basis for Calderon's guilty plea was set forth in his plea agreement. The plea agreement also contained a provision under which Calderon waived his right to appeal his sentence and the right to contest his sentence in any post-conviction

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51204

proceeding. The district court sentenced Calderon to a 135-month term of imprisonment to be followed by a three-year term of supervised release. Calderon did not appeal the district court's judgment.

Later, represented by counsel, Calderon filed a § 2255 motion along with a supporting memorandum. He claimed that (1) his trial counsel had been ineffective for failing to challenge the sufficiency of the factual basis, (2) he was actually innocent of the crime of conviction, and (3) his counsel had been ineffective for failing to consult with him regarding a direct appeal. Calderon requested an evidentiary hearing.

The Government filed a response to the § 2255 motion. The Government relied, *inter alia*, on an affidavit submitted by Calderon's trial counsel, Joseph A. Florio. In the affidavit, Florio averred that after conducting legal research and reviewing the evidence provided through discovery he had concluded that the case against Calderon was overwhelming. Calderon was unable to provide Florio with any evidence that would support a defense. According to Florio's affidavit, after many discussions, Calderon agreed that some of the allegations of the indictment were true, and Calderon asked Florio to pursue a plea agreement. Florio then negotiated a plea agreement that called for Calderon to plead guilty to Count Three of the indictment.

The district court issued an order in which it denied § 2255 relief and denied a COA. It determined that Calderon's actual innocence claim was barred by the waiver provision of his plea agreement. The district court further determined that the actual innocence claim was procedurally barred because it was being raised for the first time in a § 2255 motion and that Calderon's assertion that his counsel's deficient performance was the cause for not presenting the claim on appeal failed because, contrary to Calderon's assertions, his counsel had consulted with him regarding an appeal. The

2

district court also determined that Calderon had not made a sufficient showing of actual innocence.

Turning to Calderon's ineffective assistance claims, the district court determined that the facts set forth in the factual basis were sufficient to establish that Calderon was guilty of conspiring to launder money under § 1956(h). Given its determination that the factual basis was sufficient, the district court concluded that trial counsel had not performed deficiently by failing to object to it.

As to Calderon's claim that counsel had been ineffective for failing to consult with him regarding an appeal, the district court determined that the claim failed because "counsel both consulted with [Calderon] and followed his instructions in accordance with *Strickland*'s first-prong requirements."[1] This determination was based partially on counsel's affidavit, which, the district court stated, indicated that counsel and Calderon "had multiple conversations concerning the Plea Agreement and the appeal waiver contained therein." The district court also relied on counsel's statements in the affidavit that Calderon understood the waiver provisions of the plea agreement, as well as on statements made by Calderon at rearraignment.

Calderon filed a timely notice of appeal from the district court's denial of his § 2255 motion. This court granted a COA on two issues: (1) whether Calderon's trial counsel was ineffective for failing to challenge the adequacy of the factual basis that supported his guilty plea, and (2) whether his trial counsel was ineffective for failing to consult with him regarding an appeal. Calderon's COA request was otherwise denied.

---

[1] The district court, of course, was referring to *Strickland v. Washington*, 466 U.S. 668 (1984).

No. 14-51204

A defendant may waive his right to appeal and to pursue § 2255 relief,[2] so a preliminary question is whether the waiver provision of Calderon's plea agreement bars the ineffective assistance claims at issue in this appeal. Here, Calderon waived "his right to contest his sentence in any post-conviction proceeding," including a § 2255 motion. However, he did not waive the right to collaterally attack his conviction. The ineffective assistance claims under consideration in this appeal challenge Calderon's conviction, rather than his sentence, and therefore they are not barred by the waiver provision of the plea agreement.[3] Thus, we turn to his claims.

**Ineffective Assistance for Failing to Challenge the Factual Basis**

Calderon argues that the district court erred in denying relief on his claim that trial counsel was ineffective for failing to challenge the factual basis for his guilty plea. He contends that the factual basis was insufficient under *United States v. Trejo*, 610 F.3d 308 (5th Cir. 2010). Calderon asserts that, but for counsel's deficient performance in not challenging the factual basis, there is a reasonable probability that he would not have pleaded guilty. He contends that the district court erred in dismissing the claim without conducting an evidentiary hearing.

This court reviews a district court's factual findings for clear error, while conclusions of law are reviewed de novo.[4] The district court's conclusions as to whether Calderon received ineffective assistance of counsel are mixed questions of law and fact that are subject to de novo review.[5] In order to prevail on a claim of ineffective assistance of counsel, Calderon must show (1) that his

---

[2] *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

[3] *See United States v. Lopez*, 183 F. App'x 435, 436 (5th Cir. 2006) (stating that waiver provision affecting only the defendant's ability to appeal or seek § 2255 relief from his sentence did not affect his ability to appeal or seek § 2255 relief from his conviction).

[4] *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994).

[5] *See id.*

counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense.[6] A failure to establish either prong defeats the claim.[7]

### *The Offense of Money Laundering*

Calderon pleaded guilty to violating § 1956(h), which prohibits conspiring to commit money laundering. "To establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose."[8] The Government need not prove an overt act in furtherance of the conspiracy.[9] Direct evidence is not required, and each element of a money laundering conspiracy offense can be inferred from circumstantial evidence.[10]

The substantive offense of money laundering is defined by § 1956(a), and the offense can be committed in several ways.[11] Using the following language, the indictment, tracking the statutory language of two subsections of § 1956(a)(1), charged that Calderon and two other named defendants, as well as other unnamed persons, had conspired beginning in January 2003 "and continuing until the present time"[12] to commit an offense defined by § 1956(a)(1) in that,

> knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, [they] did conduct or attempt to conduct such a financial transaction, affecting interstate or foreign commerce, which in fact involved the

---

[6] *Strickland*, 466 U.S. at 689-94.

[7] *Id.* at 697.

[8] *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006).

[9] *Id.*

[10] *United States v. Cessa*, 785 F.3d 165, 174 (5th Cir. 2015).

[11] *See* § 1956(a)(1)(A)(i), (ii), (B)(1), (ii).

[12] The indictment was filed on April 10, 2012.

proceeds of specified unlawful activity, that is, the felonious receiving, concealment, buying, selling or otherwise dealing in a controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 846,

> • with the intent to promote the carrying on of the said specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(I), or

> • knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the said specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(I).[13]

The two subsections of § 1956(a)(1) listed in the indictment have been referred to as "promotional money laundering" (§ 1956(a)(1)(A)(i)) and "concealment money laundering" (§ 1956(a)(1)(B)(i)).[14] Here, the factual basis provides no support whatsoever for guilt on a concealment theory, and the parties dispute only the sufficiency of the factual basis to establish a conspiracy to commit promotional money laundering.

"For purposes of § 1956, a financial transaction can be established by evidence that cash proceeds from drug trafficking are given to the care and possession of another."[15] "[T]his court subscribes to a broad interpretation of the word 'promote' within the context of section 1956."[16] "[T]o 'promote' something is to 'contribute to its growth, enlargement, or prosperity of; . . . to advance.'"[17] "Payment to co-conspirators for their participation in the conspiracy for the purpose of continuing the unlawful activity amounts to

---

[13] Indictment.

[14] *United States v. Armstrong*, 550 F.3d 382, 403 (5th Cir. 2008), *abrogation on other grounds recognized by United States v. Guillermo-Balleza*, 613 F.3d 432, 433 n.1 (5th Cir. 2010).

[15] *United States v. Lozano*, 158 F. App'x 632, 639 (5th Cir. 2005).

[16] *United States v. Valuck*, 286 F.3d 221, 226 (5th Cir. 2002).

[17] *Id.* (citation, parenthetical, and brackets omitted).

'promoting the carrying on of the unlawful activity.'"[18] Where defendants engage in the illegal distribution of narcotics, their further purchases of controlled substances "clearly promote their illegal activity."[19]

Calderon argues that the factual basis is insufficient to establish that he conspired to commit a "promotional" money laundering offense under § 1956(a)(1)(A)(i) because it fails to establish that he had the requisite *mens rea*. He relies on *Trejo*, wherein this court, discussing § 1956(a)(1)(A)(i), stated that "the Government must satisfy a stringent *mens rea* requirement."[20] To establish the requisite *mens rea*, "[e]ssentially, the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity."[21] It is not enough merely to show that the defendant's actions resulted in the promotion of specified unlawful activity, nor is the government's burden met by proof that the defendant knowingly promoted the unlawful activity.[22] "Instead, there must be evidence of *intentional* promotion. In other words, the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it *with the intent* to further the progress of that activity."[23]

"Determining whether specific intent to commit promotion money laundering has been proven is necessarily a fact-bound inquiry frequently turning upon circumstantial evidence."[24] In cases like the one at bar, where

---

[18] *Lozano*, 158 F. App'x at 639 (citation omitted).

[19] *United States v. Brown*, 553 F.3d 768, 786 (5th Cir. 2008).

[20] *Trejo*, 610 F.3d at 314. *Trejo* actually involved a prosecution under § 1956(a)(2)(A), rather than the provision at issue in the instance case, § 1956(a)(1)(A)(i), but the court in *Trejo* indicated that guidance could be derived from cases construing § 1956(a)(1)(A)(i), *See* 610 F.3d at 314. This court has relied on *Trejo* in cases involving § 1956(a)(1)(A)(i). *See, e.g., United States v. Ramirez*, 55 F. App'x 315, 320-21 (5th Cir. 2014); *United States v. Holt*, 493 F. App'x 515, 520 (5th Cir. 2012).

[21] *Trejo*, 610 F.3d at 314.

[22] *Id.*

[23] *Id.* (internal citation omitted).

[24] *Id.* at 315.

drug trafficking is the underlying criminal activity, "courts have often relied on proof that the defendant was aware of the inner workings of and/or extensively involved in the drug organization responsible for the criminal activity as circumstantial proof that he had the specific intent to promote its unlawful purpose."[25] Courts have consistently required "some *additional evidence* beyond the bare transaction or transportation itself to infer specific intent."[26]

### *The Factual Basis*

Calderon's written factual basis largely concerned the activities of Freddie Rodriguez and Rodriguez's drug organization. According to the written factual basis, beginning in 2003, Rodriguez obtained drugs which were supplied to individuals and eventually sold. When the drugs were sold, currency was collected and paid to Rodriguez or to his designees. Rodriguez would gather the bulk currency, take out his portion, "and then package the remaining amounts to be transported to his suppliers in Mexico and elsewhere so that additional drugs could be obtained."

In August 2005, Rodriguez purchased a residence on Hunter Street in Cedar Hill, Texas, which he used "to store large amounts of cocaine, methamphetamine, and bulk currency." In late 2008, Calderon began living in a music production/recording studio in Cedar Hill; the studio was located on property owned by Rodriguez. Calderon earned little money from his musical endeavors. He ran personal errands for Rodriguez and earned money by doing so. In late 2010, Rodriguez invited Calderon to live at the Hunter Street residence.

---

[25] *Id.*
[26] *Id.*

No. 14-51204

In February 2011, cocaine was delivered to the Hunter Street residence, where Rodriguez was conducting a drug transaction. Rodriguez allowed Calderon to view the people unloading the cocaine, and he "told [Calderon] about his cocaine operation." Calderon was shown a safe in the Hunter Street residence which contained money and cocaine.

Subsequently, on an unspecified date, Calderon overheard Rodriguez talking with others about transporting a load of cocaine to St. Louis, Missouri. On the trip to St. Louis, which Rodriguez planned, Calderon drove a recreational vehicle (RV) that carried the cocaine. Rodriguez and another person, traveling in a separate vehicle, escorted the RV driven by Calderon. Once in St. Louis, Rodriguez conducted a cocaine transaction. According to Rodriguez, Calderon was paid $10,000 for transporting the cocaine.

On three occasions in 2011, dates unspecified, Calderon, as instructed by Rodriguez, transported cocaine from Houston, Texas, to Dallas, Texas. On each trip, Rodriguez traveled in a separate vehicle and escorted the vehicle driven by Calderon. "Upon each arrival at Houston, [Rodriguez] transacted each unlawful cocaine transaction."

On June 8, 2011, a search warrant was executed at the Hunter Street residence. During the search, law enforcement agents seized cocaine, methamphetamine, and bulk currency.

All of the above information from the factual basis was read aloud by the Government's attorney at Calderon's rearraignment, but the written factual basis contained other information that the attorney failed to read. The unread portion stated that "[s]ome members of the [Rodriguez] organization knew that the proceeds they collected were from the sale of controlled substances." After it was collected, "[t]he money would then be returned either to the suppliers or to the suppliers, like [Rodriguez], who in turn would use the money to invest, pay off suppliers in order to 're-up,' or for living expense use."

Calderon agreed at rearraignment that the factual basis read by the Government's attorney was correct. As to the written factual basis, Calderon initialed each page and signed the document, thereby agreeing and stipulating that "this factual basis is a true and accurate summary of the Defendant's offense and the conduct related to his offense."

*Analysis*

In *Trejo*, this court noted the difficulty in delineating "a precise standard of proof for specific intent" in promotional money laundering cases.[27] Nevertheless, based on the guidance provided by *Trejo*, we conclude that the factual basis was sufficient to show that Calderon had the requisite *mens rea.* The facts of Calderon's case are readily distinguishable from those of *Trejo*, on which he heavily relies, wherein the factual basis was insufficient to support a promotional money laundering conviction.[28]

In *Trejo*, the defendant was paid $1,000 by "a drug dealer named 'Jose' to load Trejo's car with drug money and transport it from Florida to presumed traffickers in Mexico."[29] They were caught in Texas, where they confessed that they were hired to transport drug money, but they only had vague information about the drug dealers who had hired them.[30] The court explained that there is necessarily some distinction between simply knowing that one has participated in a drug money scheme and having the "*intended purpose* in doing so—an end-goal, if you will—. . . to further the progress of the drug business."[31]

The court found that the incriminating facts showed only that "Trejo signed on for a one-time trip to transport drug money for a dealer he did not

---

[27] 610 F.3d at 315.
[28] *Id*. at 318.
[29] *Id*. at 317.
[30] *Id*.
[31] *Id*. (emphasis added).

know and, except for the one trip, had never worked for in the past."[32] Even when he confessed to the crime of transporting the drug money, Trejo was unable to provide any details about "Jose"; indeed, "[e]vidence regarding the inner workings of the organization that hired him—assuming that an operation even existed beyond 'Jose'—is virtually nonexistent in the record."[33] In essence, the record did not disclose Trejo's knowledge of any part of the drug operation beyond his one paid job. "Because the record [was] devoid of facts, circumstantial or otherwise, beyond the bare act of transportation," this court determined "that the factual basis for Trejo's plea does not adequately support his conviction for promotion money laundering and that the district court erred in accepting his plea on the facts presented."[34]

By contrast, the factual basis in the instant case shows that Calderon was not a mere one-time, otherwise ignorant participant in the illegal scheme. To the contrary, he had a great deal of knowledge concerning the scheme and its participants. In addition to Calderon's involvement in the transportation of cocaine on several occasions under Rodriguez's watch (including the payment of $10,000), Calderon lived in a music production recording studio owned by Rodriguez beginning in late 2008 and ran personal errands for Rodriguez during this time. Calderon then lived for several months at the Hunter Street residence owned by Rodriguez, which was the site of at least one cocaine transaction that Rodriguez allowed Calderon to witness, and which was used for the storage of large quantities of cocaine, methamphetamine, and bulk currency. Rodriguez showed Calderon money and cocaine that was within a safe at the Hunter Street residence, and Rodriguez told Calderon about his cocaine operation. Indeed, Calderon transported cocaine himself on three

---

[32] 610 F.3d at 318.

[33] Id.

[34] Id.

separate occasions from Houston to Dallas, where Rodriguez would conduct the transaction.

In sum, unlike in *Trejo*, the record evidence shows that Calderon's knowledge went well "beyond the bare act of transportation."[35] Although none of these facts constitutes "direct evidence, such as a statement by the defendant, of an intent to promote specified unlawful activity," such is not always required.[36] Here, the factual basis is sufficient because it establishes "that [Calderon] was aware of the inner workings of and/or extensively involved in the drug organization responsible for the criminal activity," thus providing "circumstantial proof that he had the specific intent to promote its unlawful purpose."[37]

Because the factual basis was sufficient, Calderon's trial counsel did not perform deficiently by failing to raise a meritless objection to it.[38] Accordingly, Calderon's ineffective assistance claim fails.[39] To the extent that Calderon argues that the district court erred by not holding an evidentiary hearing on this claim, his contention lacks merit as a district court may forgo an evidentiary hearing in deciding a § 2255 motion "if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."[40]

**Ineffective Assistance for Failing to Consult Regarding an Appeal**

Calderon claims his trial counsel was ineffective for failing to consult with him regarding an appeal, specifically an appeal of the factual basis claim which we determined to be unmeritorious above. He argues the district court

---

[35] *Id*. at 318.

[36] *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999) (sufficiency-of-the-evidence case).

[37] *Trejo*, 610 F.3d at 315.

[38] *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

[39] *See Strickland*, 466 U.S. at 697.

[40] *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

erred in denying relief on the claim based on its determination that his counsel discussed the appeal waiver provision of the plea agreement with him. Calderon asserts that his counsel's affidavit does not address the failure-to-consult claim. He contends that his counsel "was surely aware of Calderon's expressed misgivings regarding the Plea Agreement" based on their discussions *prior* to entry of the guilty plea—in which, we note, he expressly agreed to waive his right to direct appeal despite his misgivings. Notably, he does not allege that, *following* entry of the Plea Agreement, he ever expressed to his attorney a desire to appeal. The outcome of this claim turns on *Strickland*'s performance and prejudice prongs.

### *Performance Prong*

Under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."[41] In cases where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," the deficient-performance inquiry involves "a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."[42] In this context, "consult" means that counsel tendered advice about the advantages and disadvantages of appealing and made a "reasonable effort to discover" the defendant's wishes on the issue.[43] In those cases where counsel has consulted with the defendant, deficient performance is shown if counsel fails "to follow the defendant's express instructions with respect to an appeal."[44]

---

[41] 528 U.S. at 477.

[42] *Id.* at 478.

[43] *Id.*

[44] *Id.*

No. 14-51204

If counsel has not consulted with the defendant about appealing, the deficient-performance inquiry focuses on whether the decision not to consult with the defendant was unreasonable.[45] Counsel has a constitutionally imposed duty to consult with a defendant about appealing "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[46] The general requirement is that the attorney's decision whether to consult with the defendant be an objectively reasonable choice in light of all relevant factors.[47]

Calderon asserts that counsel did not consult with him regarding an appeal, and that counsel's failure was unreasonable. In the instant case, the district court determined that counsel had in fact consulted with Calderon regarding an appeal based on counsel's affidavit, wherein he averred that he had discussed the waiver provisions of the plea agreement with Calderon. The district court also pointed to Calderon's statements at rearraignment that he was satisfied with his attorney's representation and that he understood he had waived his right to appeal. Calderon does not dispute that counsel discussed the appeal waiver provision with him, but he argues that this does not constitute consultation regarding an appeal. We agree.

In *United States v. Cong Van Pham*, 722 F.3d 320 (5th Cir. 2013), the defendant, Pham, pleaded guilty pursuant to an agreement that contained an appeal waiver provision.[48] When Pham consulted with his attorney prior to entering his guilty plea, they discussed the appeal waiver provision, and Pham

---

[45] *Id.* at 479.
[46] 528 U.S. at 480.
[47] *Id.* at 479-80.
[48] 722 F.3d at 322.

14

told his counsel he believed he would receive probation despite the fact that his counsel had informed him of the possibility of receiving a statutory mandatory minimum sentence.[49] At sentencing, the government declined to allow Pham to take advantage of a safety valve provision, so he was sentenced to the statutory mandatory minimum of five years.[50] He eventually filed a § 2255 petition to vacate his sentence, based on his attorney's ineffective assistance in failing to consult with him regarding an appeal after he was sentenced.[51]

This court determined that Pham's attorney had not sufficiently consulted with him where, at most, "counsel discussed an appeal in the abstract and even then did so only *before* the sentence was pronounced," and, post-sentencing, counsel "neither mentioned the possibility of an appeal at all nor made any effort to discover Pham's wishes in that regard."[52] We emphasized that:

> Pham's counsel knew that Pham had hoped to receive a sentence of probation only. When that hope did not materialize, a visibly upset Pham "brought up that he was concerned about getting 60 months and wanted to do something to get less time." This was ample demonstration of Pham's interest in doing something to change the outcome of his sentencing through additional proceedings. We hold that this statement to counsel, when viewed in context, was enough to trigger counsel's constitutional duty to consult with Pham about an appeal.[53]

We also explained that if Pham *had* been sentenced to probation instead of the statutory mandatory minimum, as he wished, that lower sentence "could have accomplished his desire not to serve prison time and thereby pretermit any need to appeal. Thus, Pham had no reason to demonstrate an interest to

---

[49] *Id.*
[50] *Id* at 322-23.
[51] *Id.* at 323.
[52] *Id.* at 324 (emphasis in original).
[53] *Id.* at 325.

appeal a sentence that had not yet been imposed."[54] In essence, we concluded that Pham's counsel's failure to consult with him regarding an appeal following his sentencing was unreasonable because the sentencing raised a new issue that did not exist when they consulted regarding the plea agreement.

Here, as in *Cong Van Pham*, there is no indication in the record that Calderon's counsel consulted with him regarding an appeal after the sentence was imposed, and we conclude that the district court erred in its determination that Calderon received a consultation regarding an appeal. However, that does not end the inquiry. We must determine whether counsel was unreasonable in not doing so.[55]

This case differs from *Cong Van Pham* in some crucial respects. In that case, when Pham and his attorney consulted, Pham expressed his belief that he would get a sentence below the statutory mandatory minimum, and his counsel knew that he had entered his guilty plea on that belief. Thus, when he was later sentenced to the statutory mandatory minimum, his attorney should have known, based on Pham's previously expressed wishes, that the actual sentence was unacceptable. We even emphasized in the opinion that Pham's counsel might have been reasonable in not consulting with him on an appeal if he had received a sentence lower than the statutory mandatory minimum. Stated differently, Pham's counsel's failure to consult with him following his sentencing was unreasonable because changing circumstances had raised the possibility of a new claim.

In Calderon's case, however, his claim concerns whether the Plea Agreement's factual basis was sufficient to support his guilty plea. The entire basis for that claim was known at the time he entered his guilty plea. Calderon

---

[54] *Id*. at 326.
[55] *See Flores-Ortega*, 528 U.S. at 479.

consulted with his attorney prior to entry of his guilty plea, and they discussed his concerns about the factual basis and the waiver of the right to a direct appeal. His attorney even informed the court about Calderon's concerns about the factual basis in a motion to withdraw.

Nevertheless, Calderon chose to enter his guilty plea in accordance with the Plea Agreement, supported by the factual basis, fully aware he was waiving his right to a direct appeal. Unlike in *Cong Van Pham*, nothing material changed after that point, and Calderon's underlying claim in this § 2255 action concerns the factual basis, which he had already discussed with his attorney and which, for the reasons we set out above, lacks merit. Thus, we conclude Calderon's counsel was not unreasonable for failing to consult with Calderon regarding an appeal on these facts. As a result, we conclude Calderon has failed to satisfy the performance prong of *Strickland*.

### *Prejudice Prong*

Similarly, he has also failed to satisfy the prejudice prong on these facts. The prejudice prong of *Strickland* is satisfied if the defendant establishes "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed,"[56] regardless of whether his appeal had merit.[57] The rule applies in this circuit even in cases where a defendant has entered a guilty plea and waived appellate rights, "if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal."[58] As the Supreme Court explained, "[t]he performance and prejudice inquiries may overlap" in this context, "but they are not in all cases coextensive."[59] In this case, however, the outcome is

---

[56] *Id.* at 484.

[57] *See id.* at 486.

[58] *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

[59] *Id.* at 472.

the same as the performance prong. Calderon has not even alleged that he requested an appeal after entering his guilty plea, and he has not pointed to any evidence that he would have actually appealed, but for his counsel's failure to consult with him regarding an appeal. In sum, he has not shown prejudice under *Strickland*. Thus, we affirm on this point.

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.